**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOSEPH WALKER,

                              Plaintiff,

          v.                                              No. 3:15-CV-465
                                                         (CFH)
CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for Plaintiff

Social Security Administration            GRAHAM MORRISON, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**MEMORANDUM-DECISION AND ORDER**

     Plaintiff Joseph Walker brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

"defendant") denying his applications for supplemental security income benefits ("SSI")

and disability insurance benefits.  Dkt. No. 1 "Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 13.  For the following reasons, the matter is remanded to the Commissioner for proceedings consistent with this Memorandum-Decision and Order.

## I.  Background

Plaintiff, born on November 20, 1997, dropped out of high school after the ninth grade, where he was enrolled in special education classes.  T at 48.  Plaintiff does not have a GED, certificates, or licenses, and has limited reading ability.  Id.  Plaintiff is married, and has five children who, at the time of the hearing, ranged in age from five to thirteen.  Id. at 63-64.  Plaintiff last job worked as a part-time short-order cook in December 2010.  Id. at 49.  Previous to that, he worked full time as a short-order cook at various diners and also held employment that involved "test[ing] computer boards on a computer."  Id. at 50, 55.  Plaintiff protectively[1] filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on December 6, 2011.  T[2] at 82-96. Plaintiff alleged a disability onset date of February 1, 2010.  These applications were denied on January 27, 2012.  Id. T at 1-7. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a

---

[1]  "When used in conjunction with an 'application' for benefits, the term 'protective filing' indicates that a written statement, 'such as a letter,' has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  See 20 C.F.R. §§ 404.630, 416.340.  Allen v. Comm'r of Soc. Sec., No. 5:14-CV-1576 (DNH/ATB), 2016 WL 996381, at *1 (N.D.N.Y.  Feb. 22, 2016), report and recommendation adopted sub nom., 2016 WL 1020858 (N.D.N.Y. Mar. 14, 2016).

[2]  References to "T" stand for pages in the administrative transcript and reflect the pagination on the lower right hand corner of the pages, rather than the pagination at the header generated by CM/ECF.

hearing was held on September 5, 2013, and vocational expert testimony was taken on December 12, 2013.[3]  Id. at 8, 44-70, 73-81.  On January 14, 2014, ALJ Elizabeth W. Koennecke issued her decision where in she concluded that plaintiff was not disabled. Id. at 13-24.  Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-6.  This action followed.  Dkt. No. 1 ("Compl.").

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987);  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).   The substantial evidence standard is  "a very deferential standard of review

---

[3]  A hearing was originally scheduled for June 10, 2013, but that hearing was postponed to allow plaintiff an opportunity to obtain representation.  T at 30-42.

. . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude* otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

### B. Determination of Disability[4]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous

---

[4] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec 'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available

to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [Commissioner]
> will consider him [or her] disabled without considering
> vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who
> is afflicted with a 'listed' impairment is unable to perform
> substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g), as amended; Halloran, 362 F.3d at 31. If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable

6

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).


## C. ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that

plaintiff met the insured status requirements of the Social Security Act through

September 30, 2012, and has not engaged in substantial gainful activity since February

1, 2010, the alleged onset date.  T at 16.  The ALJ found at step 2 of the sequential

evaluation that during the period in question plaintiff had the severe impairment of

degenerative joint disease of the right ankle with recurrent right ankle sprain.  Id.  At

step 3, the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of Listing 1.02A.  Id. at 18.  The

ALJ then concluded that plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 C.F.R. 404.1567(a)
> and 416.967(a), because the claimant is able to lift and/or
> carry twenty pounds occasionally and ten pounds frequently,
> stand and/or walk for two hours in an eight-hour workday,
> and sit for six hours in an eight-hour work day.  The claimant
> is able to occasionally climb stairs, squat, and kneel, but the
> claimant cannot climb ladders.  The claimant is limited to
> unskilled work but can perform all of the basic mental
> demands required of unskilled work.

Id.  At step 4, the ALJ concluded that plaintiff was unable to perform his past relevant

work.  Id. at 21.  The ALJ, after hearing testimony from vocational expert ("V.E.") David

Festa, and considering plaintiff's age, education, work experience, and RFC, concluded

that jobs existed in significant numbers in the national economy that plaintiff could perform.  Id. at 22.  These jobs included the titles of: final assembler (DOT # 713.687-018), waxer (DOT # 779.687-038), and lens inserter (DOT # 713.687-026).[5]  Id. Therefore, the ALJ concluded that plaintiff "has not been under a disability, as defined under the Social Security Act, from March 1, 2011, through the date of the decision." Id. at 23.

## D.  The Parties' Arguments

Plaintiff argues that the ALJ committed reversible error insofar as (1) the Commissioner did not sustain her burden of demonstrating that there are a significant number of jobs in the national economy that plaintiff could perform within his RFC; (2) the conclusion that plaintiff had the ability to perform sedentary work was unsupported by the record, and (3) her credibility assessment erroneously considered his conservative treatment history.  Defendant argues (1) the Commissioner may properly "rely on the VE's testimony regarding the number of positions available in a broader occupational group, which is available in the DOT," (2) the ALJ properly concluded that medical evidence, including Dr. Wiesner's opinions, did not support a finding that plaintiff could stand/walk for less than two hours in an eight-hour work day, and (3) the ALJ properly assessed plaintiff's credibility.  Dkt. No. 12 at 7, 9-11.

---

[5]  "The Dictionary of Occupational Titles, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work."  Thomas v. Astrue, No. 3:11-CV-589, 2012 WL 5364275, at *3  n.7 (N.D.N.Y. Sept. 19, 2012).

## 1. Step Five Determination

As noted, although the claimant bears burden at steps one through four of the sequential evaluation, it is the Commissioner's burden to prove that there are jobs that exist in significant numbers in the national economy that the claimant can perform.  20 C.F.R. § 416.920(g); DeChirico,134 F.3d at 1180.  Plaintiff contends that the Commissioner did not meet this burden because the jobs numbers the ALJ relied on for the VE's suggested positions of final assembler, waxer, and lens inserter were numbers for occupational classifications that included as many as 1,500 other DOT titles such that the VE testified he had no way to determine how many of those 218,740 or 419,840 jobs were available for either the lens inserter, final assembler, or waxer titles.  Dkt. No. 11 at 8-9.  Defendant contends that the ALJ properly relied on the VE's proposed job titles because an ALJ "may rely on a VE's testimony regarding the number of positions available in a broader occupational group which is available in the DOT . . . even where a claimant can perform just one DOT code job, out of many, in the broader occupational category."  Dkt. No. 12 at 7 (citing Fox v. Commissioner of Soc. Sec., 6:02-CV-1160 (FJS/RFT), 2009 WL 367628 (N.D.N.Y. Feb. 13, 2009)).

Under the Social Security Regulations, "[w]ork exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."  20 C.F.R. §§ 404.1566(b), 416.966(b).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country."  20 C.F.R. § 416.966(a).

9

"Courts have generally held that what constitutes a 'significant' number is fairly minimal." Fox, 2009 WL 367628, at *20.  However, requiring proof of a "significant" number of jobs "assures that individuals are not denied benefits on the basis of '[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] lives.'" Peterson Moore v. Colvin, 14-CV-583-JTC, 2016 WL 1357606, at *5 (W.D.N.Y. Apr. 6, 2016)(quoting 20 C.F.R. § 416.966(b)); Titles II and XVI: Basic Disability Evaluation Guides, SSR 82-53, 1982 WL 31374, at *3 (1982) (noting that requiring work in significant numbers is meant "to emphasize that . . . a type(s) of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'").   A vocational expert may "testify as to the existence of jobs in the national economy and as to the claimant's ability to perform any of those jobs, given her functional limitations," but the testimony "is useful only if it addresses whether the particular claimant, with her limitations and capabilities, can realistically perform a particular job." Marvin v. Colvin, No. 3:12-CV-1779 (GLS), 2014 WL 1293509, at *10 (N.D.N.Y. Mar. 31, 2014) (citations omitted).

Several cases within this Circuit, and specifically within this District have addressed the exact question raised by plaintiff – whether a VE's testimony amounts to substantial evidence where it identifies the job numbers set forth in a general DOT occupational group, but does not identify the number of jobs attributable to the specific

job titles the VE identified – suffices to meet the Commissioner's burden at step five.[6] For the reasons that follow, the undersigned concludes that, in this case, it does not.

In <u>Marvin v. Colvin</u>, the plaintiff[7] argued that the Commissioner failed to meet the step five burden because the job numbers to which the VE testified "pertained to a broad range of positions, including jobs that Marvin cannot perform based on her RFC." 2014 WL 1293509, at *10.  The ALJ addressed the plaintiff's concerns within her decision, concluding that:

> (1) "the use of government statistics and the testimony of a [VE] to prove the existence of significant numbers of jobs which a claimant can perform is administratively noticed, and therefore deemed as valid and sufficient from an evidentiary standpoint"; (2) "the claimant is found not disabled within the framework of Medical–Vocational Rules, which take administrative notice of the existence in significant numbers in the national economy of unskilled, entry level jobs within the sedentary, light, and medium occupational categories"; and (3) "[p]roving significant numbers of existing jobs does not necessarily require proof of the exact number of existing jobs."

<u>Id.</u> at *10, n.11.  The Court disagreed with the ALJ's reasoning, concluding that "the VE's testimony was hardly clear as to the number of jobs available to Marvin in the local or national economy."  <u>Id.</u>  Thus, the Court determined that the Commissioner failed to meet her burden at step five, and remanded for further proceedings.  <u>Id.</u>

In <u>Rosa v. Colvin</u>, also a case involving the same VE who testified in the case herein, the plaintiff raised an identical argument in response to the ALJ's reliance on the

---

[6] As plaintiff points out, some of these cases involve the same vocational expert, David Festa, or the same Administrative Law Judge, Elizabeth Koennecke.  Dkt. No. 11 at 8-9.

[7] The plaintiff in <u>Marvin v. Colvin</u> was represented by the same counsel who represents plaintiff in the case currently before the undersigned, Peter A. Gorton, Esq.  <u>Marvin</u>, 2014 WL 12933509, at *1.

VE's job numbers. <u>Rosa v. Colvin</u>, No. 3:12-CV-0170 (LEK/TWD), 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2013).[8] In <u>Rosa</u>, the VE testified that the plaintiff could perform the jobs of lens inserter and final assembler but that job numbers represent all the occupations in the same standardized occupational code provided by the Bureau of Labor Statistics and New York State Department of Labor, rather than the number of lens inserter and final assembler jobs. <u>Id.</u> at *4. The VE, in response to cross examination by the plaintiff's attorney, testified that "he did not have the specific numbers such as a breakdown job analysis for the lens inserter and final assembler jobs." <u>Id.</u> at *5. The Court determined that because the VE cited to a "broad category of jobs that Plaintiff would not be able to perform because of his functional limitations" and "could not say how many lens inserter and final assembler positions existed," the VE's testimony "was hardly clear as to the number of jobs available to Plaintiff in the local or national economy[,]" and, thus, his testimony did not constitute substantial evidence. <u>Id.</u> (citing <u>Johnston v. Barnhart</u>, 378 F. Supp. 2d 274, 283 (W.D.N.Y. 2005) and <u>Kennedy v. Astrue</u>, 343 F. App'x 719, 722 (2d Cir. 2009)).

Nearly identical arguments have been raised and Courts have remanded on that ground in additional cases within this District and others. <u>Snow v. Colvin</u>, 3:15-CV-694 (FJS), 2016 WL 2992145 (N.D.N.Y. May 20, 2016)[9](remanding after concluding that the Commissioner did not meet her step five burden where the vocational expert's

_____

[8] The plaintiff in <u>Rosa v. Colvin</u> was represented by the same attorney who represents plaintiff in the case currently before the undersigned, Peter A. Gorton, Esq. <u>Rosa</u>, 2013 WL 1292145, at *1.

[9] The plaintiff in <u>Marvin v. Colvin</u> was represented by the same counsel who represents plaintiff in the case currently before the undersigned, Peter A. Gorton, Esq. <u>Snow</u>, 2016 WL 2992145, at *1.

proposed job numbers were "not specific to the job titles, but instead are representative of broad occupation groups which include hundreds of other job titles – many of which are not available to the Plaintiff due to his limitations," and where the vocational expert "knew of no other way to determine how many individual jobs would be available to Plaintiff other than a labor market survey," the vocational expert "made no attempt to adjust the broad national numbers to approximate how many positions exist for the specific job titles discussed."); Peterson Moore, 2016 WL 1357606 (remanding to Commissioner after concluding that Commissioner did not meet her step five burden where the VE testified to broad ranges of positions, but "could not even provide a 'ballpark estimate' of the number of jobs she testified that plaintiff could perform" and "the ALJ failed to make any inquiry into the foundation and reliability of the job numbers provided by the VE.").

However, as the Commissioner recognizes, not every case in which a similar argument was raised has resulted in remand. First, in Fox, the VE – the same VE as testified in the case at bar – testified that the plaintiff could perform jobs that were within the broad occupational group of "protective service workers," but when considering the VE's testimony and the plaintiff's functional limitations, the plaintiff could perform only one title within that group, a surveillance system monitor. Fox, 2009 WL 367628, at *17. The VE was unable to identify the number of jobs available for the surveillance system monitor title. Id. Thus, the plaintiff argued that the Commissioner could not demonstrate that there were jobs that existed in significant numbers in the national economy, and failed to meet the step-five burden. Id. The VE could not testify as to

the specific number of jobs available as a surveillance system monitor, but noted that "surveys conducted by the Department of Labor and the State showed 132,980 Protective Service Occupation jobs in the national economy and 200 in the Central New York region.  Based upon his best estimate, however, the VE testified that the number of surveillance system monitor jobs was 'a small percentage lower.'"  Id. at *20 (internal record citations omitted).  The Court concluded that the Commissioner met the step five burden because: (1) what constitutes a 'significant' number of jobs is "fairly minimal"; and (2) "the number of jobs identified by the VE, even if diminished by a small percentage in his estimation, constitutes a significant number of jobs, which the ALJ properly relied upon in finding that work existed in the national and regional economy that Plaintiff could perform . . . ."  Id.

Similarly, in Vandermark v. Colvin,[10] cross examination revealed that the VE's job-incidence numbers "did not reflect the actual number of positions available for each specific DOT job code."  3:13-CV-1467 (GLS/ESH), 2015 WL 1097391, at *10 (N.D.N.Y. Mar. 11, 2015).  When asked how he arrived at the job numbers he provided on direct examination, the VE testified that

> he derived them as a product of his own judgment formed after consulting several sources, a publication identified in the transcript as "employment stats quarterly," a computer program titled "Job Browser Pro," unidentified "source documents" from the Department of Labor and the state's Employment Security Office and collaborative efforts with other vocational experts to come up with a reasonable

---

[10]  The plaintiff in Vandermark v. Colvin was represented by the same counsel who represents plaintiff in the case currently before the undersigned, Peter A. Gorton, Esq.  Vandermark, 2016 WL 1097391, at *1.

14

> number. He then made adjustments twice a year, having
> recently lowered his numbers based on current high
> unemployment rates. He could not recite or recalculate that
> formula, however, during the administrative hearing.

Id. (footnotes and citations to administrative transcript omitted). In Brault v. Soc. Sec.

Admin., 683 F.3d 443, 446 (2d Cir. 2012) acknowledged that because the DOT codes

do not report the number of available jobs in the national economy, VEs "must obtain

additional information to assess whether positions exist for the occupations disability

claimants can still perform." Id. at *12. There, the Court acknowledged that "vocational

experts' methods for associating SOC or similarly based employment numbers to DOT-

based job types have been challenged," but "left for another day in a closer case" "the

extent to which administrative law judges must test vocational experts' testimonies." Id.

(quoting Brault, 683 F.3d at 450). Brault "emphasized . . . that the deferential

substantial-evidence standard is extremely flexible, and gives reviewing federal courts

freedom to take a case-specific, comprehensive view of administrative proceedings,

weighing all evidence to determine whether it is substantial." Id. at *14 (citing Brault,

683 F.3d at 449). Finally, Brault observed "the marked absence of any applicable

regulation or decision requiring a vocational expert to identify with greater specificity the

source of his figures or provide supporting documentation," and concluded that the ALJ

"did not need to find specific numbers of jobs – all he was required to do was find that

'substantial' positions exist." Id. at *13 (quoting Brault, 683 F.3d at 450).

Vandermark also noted that "Brault was a focal point" in Kennedy v. Astrue, 343

F. App'x 719, 722 (2d Cir. 2009) (summary order), wherein the VE testified that the data

on which she relied in reaching her conclusion on job titles the plaintiff could perform

15

"also encompassed approximately 59 other DOT titles."  In <u>Kennedy</u>, the Second Circuit

noted that,

> viewed in context, it is apparent that the expert arrived at her
> estimated figures for charge-account clerk positions by
> discounting from the total numbers for all 60 DOT titles.
> Thus, the expert's testimony on this point did not introduce
> any meaningful uncertainty as to the number of charge
> account clerk positions available in the local or national
> economy.

<u>Id.</u> at *14.  The Court in <u>Vandermark</u> ultimately affirmed the Commissioner's

determination, concluding that the VE's testimony, which "accounted for the fact that

the statistical groups on which he relied included more jobs than a person with

Vandermark's limitations can perform" and "adjusted those incident number

accordingly" by reducing reported incidence numbers by a certain percentage to "'factor

out specific jobs.'" <u>Id.</u> at *17.  The Court concluded that, although the VE's "adjustments

were not made through application of formal theory or use of mechanical or

technological aids," the VE's "panoptic experience permitted him to form a reliable

opinion based on judgment, instinct and effort."  <u>Id.</u>

Here, the VE testified that the number of jobs for each job title "are the total

number of jobs for all the separate DOT titles within the . . . standard occupational . . .

[c]lassification" and that there were approximately 1,500 different DOT titles within that

standard occupational classification for which lens inserter and final assembler, and

550 separate DOT titles in the standard occupational classification for waxer.  <u>Id.</u> at 78-

79.  The VE confirmed that he had "no way of accurately extrapolating" the number of

jobs that would be available out of the 218,740 jobs in the standard occupational

16

classification for the titles of final assembler or lens inserter or the number of jobs available out of the 419,840 jobs in the standard occupational classification for the waxer title.  Id. at 80.

The undersigned finds that the Commissioner did not meet her step five burden of demonstrating that there are a substantial number of jobs that exist in the national economy that the plaintiff can perform.  The undersigned recognizes that the ALJ, absent a rule or regulation otherwise, need not demonstrate the exact number of jobs available for specific titles or the source for her figures, so long as he or she demonstrates that the job titles are available to plaintiff in "significant" numbers.  Brault, 683 F.3d at 449; Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 407 at n.13 (D. Conn. 2012).  However, unlike in some of the cases discussed herein, where the reviewing Court affirmed the Commissioner's decision, the VE in this case did not reduce the overall numbers to account for jobs within that classification that plaintiff could not perform nor provide an estimation of the numbers of jobs available in the proposed titles.  Kennedy, 343 F. App'x at 722 (affirming the Commissioner's decision where the VE "discounted from the total numbers for all 60 DOT titles" to reach an estimate number of jobs available in specific titles); Vandermark, 2015 WL 1097391, at *10 (affirming the Commissioner's decision  where VE reduced job numbers to factor out jobs the plaintiff could not perform); Fox, 2009 WL 367628, at *3 (affirming the Commissioner's decision the VE testified that, based on his best estimate, the number of surveillance system monitor jobs in the Central New York was a "small percentage lower" than the 200 jobs in the protective service occupation); Dugan v. Soc. Sec.

17

Admin. Com'r, 501 F. App'x 24 (2d Cir. 2012) ((affirming the Commissioner's decision where the VE testified that there were 225 positions in one job title and 375 positions in another title within the state).

To be clear, the Court's concern is not with a lack of formal methodology in reaching job numbers, as was the concern in many of the cases reviewed above; rather, the concern lies in the lack of any attempt to demonstrate that the identified jobs titles were available to plaintiff.  The VE acknowledged that the numbers he provided applied to the entire categories of jobs, which included over 550 jobs titles for one general classification, and over 1500 job titles for the classification.  T at 78-80.  These classifications would necessarily include job titles that plaintiff is not capable of performing under the ALJ's RFC.  This general testimony amounts to "incidence testimony based on broad occupational groupings without accounting for the fact that such groupings include more jobs that [sic] a particular claimant can perform, without adjusting those incident numbers accordingly or when they otherwise inject meaningful uncertainty as to how adjustments are made."  Vandermark, 2015 WL 1097391, at *16. Had the VE been able to provide a reduction in the overall numbers of the job titles to provide more certainty that there are jobs available in the national economy that plaintiff could perform in the distinct job titles identified, the Court may not have found fault with such testimony.  See Wheeler v. Comm'r of Soc. Sec., No. 3:15-CV-105, 2016 WL 958595, at *12 (N.D.N.Y. Mar. 7, 2016) ("[G]enerally, the courts have determined that a VE's experience allows him or her to form a reliable opinion on whether significant numbers of jobs exist in the national economy.") (citing Blake v. Colvin, No. 2:14-CV-52,

18

2015 WL 3454736, at *9 (D. Vt. May 29, 2015)).  However, the VE here was unable to provide such an estimate.

Although the ALJ acknowledged the concerns raised by plaintiff's counsel during cross-examination, the ALJ attested that the Commissioner met her burden because: (1) "reliance on the DOT and testimony of a vocational expert as valid methods to prove the existence of significant numbers of jobs that a claimant can perform is administratively noticed, and therefore deemed valid and sufficient from an evidentiary standpoint," (2) "[p]roving significant numbers of existing jobs does not necessarily require proof of the exact number of existing jobs" and the Commissioner's "burden is satisfied by proof of numbers which, although somewhat approximate, can be reasonably deemed significant, even with allowances for part-time jobs, jobs that do not exactly match the claimant's functional or vocational parameters, and other reductions." T at 22-23.  The Court disagrees with the ALJ's reasoning because, although the DOT has been deemed "valid" and courts have determined that exact numbers of existing jobs is not required, there still must be a demonstration that there are jobs that exist in significant numbers in the national economy.  See Marvin, 2014 WL 1293509, at *10. The Court is not holding the Commissioner to an "impossible burden" nor is it concluding that an *exact* number is required, T at 23; rather, it is holding the Commissioner to the standard set forth within the regulations – to demonstrate that jobs existed in significant numbers that plaintiff was capable of performing.   Requiring at least an estimate of jobs in specific titles, where that estimate is either based on sources/literature or the VE's experience/consultation is consistent with the regulations

19

and "assures that individuals are not denied benefits on the basis of '[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] lives.'" Peterson Moore, 2016 WL 1357606, at *5 (quoting 20 C.F.R. § 416.966(b)); see Robinson v. Astrue, No. 08-CV-4747 (RJD), 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009) ("while the Social Security Act does not specify any precise formula for determining whether a particular number of jobs is sufficiently 'significant,' a number of courts have suggested that [200 local jobs and 3,000 national jobs] would not qualify as sufficiently significant.").

Thus, the Court finds that VE's testimony, adopted by the ALJ, did not provide a "fair estimate of the jobs available" that plaintiff can perform. Jones-Reid, 934 F. Supp. 2d at 407 n.13. Accordingly, it is determined that the Commissioner failed to meet her burden at step five, and remand is necessary to further address whether jobs exist in significant numbers in the national economy that plaintiff can perform.

### 2. RFC: Sedentary Work

Plaintiff argues that the ALJ's RFC, insofar as it concludes that he has the ability to perform sedentary work, is unsupported by the record. Dkt. No. 11 at 9. Plaintiff contends that "[t]here is only one medical opinion of record (from Dr. Wiesner), and it does not support the ability to do sedentary work" as it demonstrates that plaintiff cannot stand for more than one hour in an eight-hour work day. Id.[11] The

---

[11] Plaintiff's brief mentions the other proposed limitations that Dr. Wiesner indicated in the questionnaire, but sets forth arguments only regarding plaintiff's ability to stand. Dkt. No. 11 at 10-11.

Commissioner argues that the ALJ's conclusion that plaintiff could perform sedentary

work was proper, as the ALJ properly rejected Dr. Wiesner's conclusions regarding

plaintiff's standing limitations.[12]  Dkt. No. 12 at 8.

Sedentary work

> involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files,
> ledgers, and small tools.  Although a sedentary job is
> defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.11567(a).

Lawrence Wiesner, D.O., performed an orthopedic independent medical

examination on June 28, 2013.  T at 370.  Dr. Wiesner reviewed plaintiff's medical

records, noting "an MRI of the ankle with a chronic fracture fragment near the lateral

malleolus.  A torn anterior talofibular ligament, moderately severe localized, irregular

ankle joint chondral degeneration, four loose bodies, and a segmental longitudinal split

tear and degeneration and tenosynovities involving peroneus brevis tendon."  Id. at 371.

Dr. Wiesner's impression was "[c]hronic right ankle pain with degenerative changes and

chronically torn ligaments."  Id.  Dr. Wiesner concluded that plaintiff was "moderately to

significantly limited with regard to his right ankle" and "is unable to lift, push, pull, or

carry items greater than 20 pounds and not repetitively due to increased stress in the

---

[12]  The Commissioner also suggests that the opined standing limitations set forth in Dr. Wiesner's questionnaire, as he failed to answer whether plaintiff would need to alternate between sitting and standing, "likely" indicate that "Dr. Wiesner's opinion was addressing Plaintiff's ability to stand *continuously* . . ."  Dkt. No. 12 at 9.  Although this may have been Dr. Wiesner's intention, the Court has no way of confirming such, and declines to do so as reaching such a conclusion merely from the fact that Dr. Wiesner left one question unanswered would require undue speculation.

ankle." Id.  Plaintiff "should not climb ladders[,]" and "would have difficult squatting and kneeling due to increased stress on his ankle." Id.

Also on June 28, 2013, Dr. Wiesner completed a "questionnaire." T at 376. Dr. Wiesner indicated that plaintiff suffered "[r]ecurrant sprains right ankle."[13] Id. Dr. Wiesner provided that plaintiff would need more than one ten-minute rest period per hour. Id. He opined that plaintiff's pain would have a moderate – "a limitation of function . . . of 20% or greater but not precluding function" – impact on his concentration, and ability to sustain work pace. Id. Dr. Wiesner indicated that plaintiff would be off task 30% of the time. Id. The side effects of plaintiff's medication were difficulty concentrating and fatigue. Id. at 377. Dr. Wiesner provided that plaintiff could sit for six hours in an eight-hour work day, and stand or walk for one hour in an eight-hour work day. Id. Dr. Wiesner did not answer whether plaintiff needed to alternate between sitting and standing or estimate how frequently plaintiff should change positions. Id.

Although it appears that the ALJ made several requests, there are no medical source statements in the administrative transcript from any of plaintiff's treating providers. T at 20, 21.[14] The ALJ gave "significant weight" to Dr. Wiesner's findings in the Orthopedic IME "due to his examination of the claimant and the relative consistency

---

[13]  The Questionnaire is handwritten, and the remainder of Dr. Weisner's answer to question 1 is illegible.  T at 376.

[14]  "[T]he lack of a medical source statement from a treating physician, will not, by itself, necessarily render the record incomplete."  Beach v. Commissioner of Soc. Sec., 7:13-CV-323 (GLS), 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014) (citing 20 C.F.R. 404.1513(b)(6); Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013).

of these opinions with the longitudinal medical evidence in the record." Id.  However, the ALJ accorded "reduced weight to Dr. Wiesner's hand-written answers to the questionnaire created by the claimant's representative, because the opinions are not consistent with the overall medical evidence, including clinical findings." Id. at 20-21. The ALJ concluded that the opinions in the questionnaire "that the claimant needs more than one ten minute rest period per hour, has difficulty with concentration, work place, and staying on-task, and stand/walk for one hour in an eight-hour workday contradict Dr. Wiesner's own report, in which he did not identify these limitations." Id. at 21.  The ALJ further determined that the answers in Dr. Weisner's questionnaire "also contradict consistent clinical findings of good ambulation with the assistance of a brace as well as consistent medical recommendations to increase exercise . . . ." Id.

The ALJ reviewed medical records from Dr. Kiran Talati, MD, a physician at Lourdes Hospital. T at 20, 318-21, 347-50.  She observed that Dr. Talati noted that plaintiff "had trace edema and minimal tenderness in the ankle" and "recommended that the claimant increase his exercise activity." Id. at 20.  The ALJ also referenced records from Dr. Kamlesh S. Desai of Orthopedic Associates, who, in October 2011, "noted that, despite swelling and a limited range of motion, the claimant had satisfactory gait and full weight-bearing in the lower right extremity; he also noted that the claimant ambulated satisfactorily with the support of a brace." T at 21.  The ALJ also noted a May 2012 visit where Dr. Desai "noted that the claimant had tenderness of the right ankle with stable ligaments; he recommended conservative treatment, including the intermittent use of a brace." Id.  Finally, the ALJ referenced treatment notes from nurse

practitioner Scott Rosman, who "stated that the claimant reported ankle pain but had not received orthopedic care in four or five months," and, at one visit wherein plaintiff requested he complete disability paperwork, NP Rosman "noted that plaintiff was "wearing sandals today and reports he is working side jobs mowing lawn[s] . . . I find it hard to prove total disability," would complete the disability paperwork to the best of his ability, and suggested that plaintiff also have Dr. Desai complete the paperwork. Id. at 20.

Plaintiff asserts that the ALJ must accept Dr. Wiesner's statement of plaintiff's limitations because there is no other medical opinion in the record regarding plaintiff's abilities. Dkt. No. 11 at 10. The undersigned concludes that the ALJ did not commit reversible error in assigning significant weight to Dr. Wiesner's orthopedic independent medical examination but reduced weight to his questionnaire answers. T at 20-21. "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations. . . ." Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013). Indeed, an ALJ may properly "credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported." Viteritti v. Colvin, No. 14-6760 (DRH), 2016 WL 4385917, at *11 (E.D.N.Y. Aug. 17, 2016) (citing Pellam, 508 F. App'x at 89). This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement setting forth "moderate to severe limitations." Pellam, 208 F. App'x at 90.

Although Dr. Wiesner's questionnaire sets forth very restrictive limits on plaintiff's

ability to stand or walk, this limitation is contradicted by other record evidence even absent another medical source statement in the record.  Further, during Dr. Wiesner's physical examination of plaintiff, Dr. Wiesner identified certain physical limitations, such as a limited ability to carry items over twenty pounds, climb ladders, squat, or kneel, but did not identify any limitations with standing.  T at 371.  Although there is no opinion regarding plaintiff's physical abilities or limitations from any treating provider, treatment notes provide insight into plaintiff's condition and amount to substantial evidence in support of the ALJ's RFC.  In August 2013, NP Rosman noted that plaintiff reported working side jobs mowing lawns and observed that plaintiff was wearing sandals.  Id. at 401.  NP Rosman also noted that he "f[ou]nd it hard to prove total disability[.]"  Id.  In October 2011, Dr. Desai noted that plaintiff had a satisfactory gait, had full weight bearing ability in his lower extremity, and successfully ambulated with a brace.  Id. at 335.  In May 2012, Dr. Desai observed that plaintiff was "not using any brace for the ankle."  Id. at 333.  Further, medical professionals recommended that plaintiff exercise in order to lose weight and reduce the stress on his ankle.  Id. at 319, 333-34.  Further, plaintiff testified at the hearing that he performed activities of daily living that are inconsistent with his argument that he is unable to perform sedentary work: he performs some childcare duties for his five children, including watching his children while his wife goes to the grocery store; he sometimes goes to the grocery store with his wife; he cooks dinner for his family one to two nights per week; he prepares meals for himself; he occasionally vacuums; he takes out the trash; and he puts away a few dishes.  Id. at 63-67.

As the Second Circuit has made clear, "'under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" McAllister v. Colvin, 3:14-CV-01488 (TWD), 2016 WL 1122059, at *12 (N.D.N.Y. Mar. 22, 2016) (citing Brault, 683 F.3d at 448). Here, "the record demonstrates that the [ALJ] carefully reviewed the entire record . . .and declined to adopt those [limitations] that were unsupported." See Cosme v. Colvin, 15-CV-6121P, 2016 WL 4154280, *12 (W.D.N.Y. Aug. 5, 2016). The undersigned finds that the ALJ's conclusion that plaintiff had the RFC to perform sedentary work, including standing or walking for a maximum total of two hours in an eight-hour work day, is supported by substantial evidence as the objective medical evidence and plaintiff's testimony do not support Dr. Wiesner's questionnaire answer indicating that plaintiff is unable to stand for more than a total of one hour in an eight-hour day, must take more than one ten-minute rest per hour, and would be off task more than thirty percent of the time. T at 376. Thus, reconsideration of this matter on remand is not required.

### 3. Credibility

Plaintiff argues that the ALJ erred in relying on his history of conservative treatment in assessing his credibility. Dkt. No. 11 at 12. Defendant does not address this exact argument, but instead contends that the ALJ's credibility assessment was

26

proper insofar as plaintiff's complaints of pain were "not entirely credible."  Dkt. No. 12 at 10-11.

Once an ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," he or she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In making this assessment, the ALJ is to "consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2,1996).  In addition to the objective medical evidence, the ALJ must consider: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." F.S. v. Astrue, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3) (i)-(vi)).

"[A] plaintiff may be deemed less credible 'if the level or frequency of treatment is inconsistent with the level of complaints.'" Phelps v. Commissioner of Soc. Sec.,  1:15-CV-0499 (GTS), 2016 WL 3661405, at *8 (N.D.N.Y. July 5, 2016) (quoting SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); Sickles v. Colvin,12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014); Church v. Colvin, __ F. Supp. 3d __, 2016 WL

3944481, at *5 (N.D.N.Y. July 18, 2016) (determining, where the ALJ noted that the plaintiff's treatment for musculoskeletal problems was conservative insofar as the plaintiff declined injections and surgery, that the consideration was not improper as there was substantial evidence in the record to support the ALJ's finding that the plaintiff's symptoms were not as disabling as alleged).

Here, although the ALJ did refer to plaintiff's conservative treatment, the ALJ did not rest her credibility determination solely on this factor. The ALJ also reviewed plaintiff's medical records and noted that "multiple radiology reports reveal degenerative changes in the right ankle" and that plaintiff was reported by treating medical providers as having satisfactory gait and ambulation and the ability to fully bear his weight with his lower extremity. T at 19-20. Further, the ALJ pointed to medical records suggesting that plaintiff was more active – taking "side jobs" mowing lawns – than he testified as being, and had not seen his orthopedic care provider for period of four to five months. Id. at 20; Jaworski v. Colvin, 3:15-CV-510 (GLS), 2015 WL 5750041, at *7 (N.D.N.Y. Sept. 30, 2015) (quoting SSR 96-7, 61 Fed. Reg. at 34,386) ("Information about a claimant's daily activities recorded by medical sources and reported in the medical evidence 'can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain or other symptoms.'").

Further, the ALJ took note of plaintiff's ability to perform some child care tasks, and cook meals for his family, albeit with his foot propped up. Id. at 19. Thus, the Court finds that the ALJ's consideration of plaintiff's conservative treatment history did not amount to reversible error. Moreover, even if the ALJ had not considered plaintiff's

28

conservative treatment, the ALJ's credibility assessment would still be supported by substantial evidence due to the inconsistency between plaintiff's claims of near total disability and his engagement in activities that would appear less restrictive than those he claimed capable of performing.  See Phelps, 2016 WL 3661405, at *8 (citing Schlicting v. Astrue, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (concluding that, even if the ALJ erred in considering the plaintiff's conservative treatment in assessing credibility, such would be harmless error where other substantial evidence supported the ALJ's credibility determination).

Accordingly, the Court concludes that the ALJ properly complied with the regulations, and properly set forth the inconsistencies that she relied on in assigning less credit to plaintiff's allegations of pain and limitations.  Thus, the Court finds that there is no reason to disturb the ALJ's credibility assessment, as the assessment is supported by substantial evidence, and remand on this basis is not needed.

### III.  Conclusion

Having reviewed the administrative transcript and the ALJ's findings, the undersigned concludes that the Commissioner's determination is not supported by substantial evidence insofar as the Commissioner failed to meet her burden at step five of the sequential evaluation, and that remand for further administrative action consistent with this Memorandum-Decision and Order is needed.  Accordingly, it is hereby:

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be

**GRANTED** and that the matter be remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk of the Court serve copies of the Memorandum-Decision and Order on the parties in accordance with the Court's Local Rules.

**IT IS SO ORDERED.**

Dated: September 13, 2016
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge